```
                BEFORE THE UNITED STATES JUDICIAL
                PANEL ON MULTIDISTRICT LITIGATION


 In re APPLE INC. APP STORE    .  MDL NO. 2985
 SIMULATED CASINO-STYLE        .  Thursday, March 25, 2021
 GAMES LITIGATION              .  11:10 a.m.
 . . . . . . . . . . . . . . . .


                    TRANSCRIPT OF ORAL ARGUMENT
                     VIA VIDEO TELECONFERENCE



 BEFORE:             HONORABLE KAREN K. CALDWELL, CHAIR
                     Eastern District of Kentucky

                     HONORABLE NATHANIEL M. GORTON
                     District of Massachusetts (Recused)

                     HONORABLE MATTHEW F. KENNELLY
                     Northern District of Illinois

                     HONORABLE DAVID C. NORTON
                     District of South Carolina

                     HONORABLE ROGER T. BENITEZ
                     Southern District of California

                     HONORABLE DALE A. KIMBALL
                     District of Utah

 APPEARANCES:


 For Plaintiffs:     ANDREA R. GOLD, ESQ.
                     Tycko & Zavareei LLP
                     1828 L Street NW
                     Suite 1000
                     Washington, DC 20036
                     (202) 973-0900

                     JOHN E. NORRIS, ESQ.
                     Davis & Norris LLP
                     2154 Highland Avenue S
                     No. 4002
                     Birmingham, AL 35205
                     (205) 930-9900
```

```
For Plaintiffs:        BENJAMIN S. THOMASSEN, ESQ.
                       Edelson PC
                       350 North LaSalle Street
                       14th Floor
                       Chicago, IL 60654
                       (312) 589-6370

For Defendant:         JOHN S. GIBSON, ESQ.
                       DLA Piper LLP (US)
                       2000 Avenue of the Stars
                       Suite 400 North Tower
                       Los Angeles, CA 90067
                       (310) 595-3000

Court Reporter:        Bryan A. Wayne, RPR, CRR
                       U.S. Courthouse, Room 4704-A
                       333 Constitution Avenue NW
                       Washington, DC 20001
                       (202) 354-3186
```

Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

```
 1                      P R O C E E D I N G S
 2            THE DEPUTY CLERK:  The United States Judicial
 3   Panel on Multijurisdictional Litigation is now in session.
 4   Due to the COVID-19 pandemic emergency, the Panel will
 5   conduct this hearing on the Zoom platform, so we're going to
 6   be following some different rules than we would if we were
 7   all in the courtroom together.
 8            Before I begin going over some reminders for participating
 9   counsel, let me give you a heads-up, counsel.  When we start
10   hearing cases, the Panel will first call 2985, the Apple Casino
11   Games Litigation.  We're going to call that case first; then it
12   will be followed by Case No. 2984, the Folgers Coffee case.
13   So I thought I'd give you a little heads-up if you were thinking
14   you might be second up for argument.
15            Now, as I said a moment ago, the staff has prepared counsel
16   for this proceeding, but I'd like to take just a moment to give
17   you some additional reminders.
18            First, this proceeding is being recorded by a court
19   reporter.  Transcripts of the arguments will be filed in
20   the respective dockets, as soon as they are available, at
21   the conclusion of the hearing.
22            Let's talk for a moment about the method for argument
23   and questions by the Panel.  To make the process more orderly
24   and to protect the record, the Panel will permit counsel to
25   use their full allocated argument time without interruption.
```

1       During the arguments, our goal is to limit the video and audio
2  to the Panel judges, the timer, and arguing counsel.
3       Therefore, all counsel who are not arguing shall mute
4  their microphones and turn off their videos unless I instruct
5  you otherwise.  That'll enable us to make certain that all
6  parties can be heard during the course of their arguments.
7  If you cannot mute your microphone or turn your video off,
8  you may be removed from the videoconference so that we can
9  proceed with these arguments in an orderly fashion.
10      The Panel uses a timer system during oral argument.
11 You'll see it on the screen.  The yellow light indicates that
12 you have 30 seconds remaining in the argument, the red light
13 means your time is up, and the time limitations will be strictly
14 enforced.  Once the argument is complete, I'll call on Panel
15 members to ask any questions that they might have.
16      And, counsel, please pay attention and be prepared to
17 activate your microphones and video when it's your time to
18 argue.  We encourage you to use the Gallery View setting on
19 Zoom so that you can see all the Panel judges and the timer.
20      When I call on you for oral argument, please state your
21 appearance for the record.  This includes your name, the party
22 you represent, and your position on the motion.  Please take
23 your time in doing this because we're not going to start the
24 timer until after you've stated your appearance.  This will
25 assist all the judges as well as the court reporter and members

1     of the public who are listening by audio.

2         Now, if any arguing counsel experiences technical
3     difficulties during your argument, please send a chat to the
4     meeting host, who will communicate it to me.  If somehow you
5     become disconnected from the meeting and are unable to reconnect,
6     please notify the staff by email or at the address that we
7     previously provided to you.  If you can't reconnect, the Panel
8     will deem your argument submitted on the papers.

9         Now, two conference lines are bridged into the video-
10    conference so that interested counsel, the press, and the public
11    can listen to the hearing.  No recording of this hearing is
12    permitted.

13        Now, as I said, I'm going to begin with the proceedings.
14    And we will be proceeding out of order, and I will call the
15    first case, which is 2985, the Apple Casino Games Litigation.

16        Mr. Gibson, the Panel will recognize you.

17            MR. GIBSON:  Thank you.  Good morning, Judge Caldwell
18    and members of the Panel.  John Gibson of DLA Piper for
19    Defendant Apple.  Apple is the movant, seeking centralization
20    in the Northern District of California.  I have two points this
21    morning.

22        First, centralization has become even more important in
23    light of the growing number of actions in a growing number of
24    districts.  Now, there are ten actions in eight districts.
25    With leave from the Panel, Apple filed its reply to a third-

1   party response a week ago.  Two more actions have already been
2   filed since that reply.
3       That makes this matter even more appropriate for
4   centralization because the Panel has ordered centralization
5   in cases involving fewer actions, in fewer districts, such as
6   the *Broiler Chicken* antitrust matter in December involving
7   only five actions in four districts.  It also makes informal
8   coordination, on the other hand, even more difficult and
9   unlikely, and it multiplies duplicative discovery and the
10  risk of inconsistent rulings.
11      Second point, the growing number of actions in the
12  Northern District of California makes transfer there even more
13  appropriate.  When briefing closed, Your Honors, there were no
14  actions in that district.  Now there are three actions there
15  and only one action in any other district.  That makes this even
16  more of a classic case for transfer to the Northern District of
17  California.  All of the parties agree that these issues should
18  be litigated there.
19      Finally, it's the center of gravity for this litigation,
20  the place where the key witnesses and documents reside, where
21  Apple is headquartered.  And for all of those reasons, it's the
22  most appropriate transferee district.  Thank you.
23          JUDGE CALDWELL:  Thank you, Mr. Gibson, and I see
24  you've reserved a minute for rebuttal.
25          MR. GIBSON:  Yes.  Thank you.

1        JUDGE CALDWELL:  Any Questions from the Panel?
2    Judge Kennelly.
3        JUDGE KENNELLY:  So you made the point, Mr. Gibson,
4  that everybody agrees that the cases should all be in the
5  Northern District of California.  So why can't that just get
6  worked out without creating centralization?
7        MR. GIBSON:  There are some difficulties with a
8  large number of actions, Your Honor.  First, we would have to
9  be concerned that seven districts would have to rule on 1404
10 transfer motions which, as the cases say, is an unlikely task
11 to happen all within the same time frame.  And so that's one
12 difficulty is just the growing number of actions.
13     A second thing is, even if all the transfer motions
14 were granted under 1404 and the cases end up in the Northern
15 District, it'd somehow still have to be before one judge
16 in a way that makes sense to coordinate some of the very
17 sophisticated issues we have in terms of discovery and motion
18 practice including issues regarding the relationships between
19 Apple and its third-party app developers, the contractual
20 structure with regard to users as well as the third-party
21 app developers.
22        JUDGE KENNELLY:  So on the first of those two points,
23 if everybody agrees that the cases should all be in Northern
24 District of California, wouldn't everybody in the other
25 districts just agree to 1404(a) transfer, which would sort

1  of obviate the need for judges to have briefing and ruling,
2  or am I missing something?
3              MR. GIBSON:  In those cases, Your Honor, the courts
4  have to agree.  The courts have to grant a joint motion.  And
5  as some of the cases the JPL has authored say, that's not a
6  foregone conclusion.
7              JUDGE KENNELLY:  Okay.  Thanks.
8              JUDGE BENITEZ:  In that regard, if everybody was to
9  agree under 1404, wouldn't that make it easier for trial of
10 the case in the end?  Because centralization doesn't allow for
11 trials for those cases that belong in other districts, does it?
12             MR. GIBSON:  They don't, although there could be
13 a bellwether approach, in which case the parties could agree
14 on that point once they're all in one district before one judge
15 for pretrial proceedings.
16             JUDGE BENITEZ:  So, to follow Judge Kennelly's
17 question, wouldn't it make more sense for all the parties
18 to simply stipulate to have their actions transferred to the
19 Northern District of California, and that way the cases could
20 all be resolved, could be tried all in one district?
21             MR. GIBSON:  While it might make sense, there's a
22 difficulty, with the growing number of actions, that that would
23 actually happen.  And even if the parties were all to agree,
24 and I'm not clear that all the parties would agree to the method
25 of the transfer, it would still be difficult to get seven judges

1  in seven different districts to all rule within the same time
2  frame.  Again, we might have one or two that are granted early
3  on and then two or three that are dragging for many months, and
4  that would put these cases in hiatus, whereas, obviously, a 1407
5  transfer is very expeditious, gets things done, and eliminates
6  that uncertainty.
7      JUDGE BENITEZ:  Great.  Thank you.
8      MR. GIBSON:  Thank you, Your Honor.
9      JUDGE CALDWELL:  Any other questions for Mr. Gibson?
10 Hearing none, the Panel will now recognize counsel Andrea Gold.
11     MS. GOLD:  Thank you, Your Honor.  My name is Andrea
12 Gold of Tycko & Zavareei on behalf of plaintiff Kiesha Lowe,
13 who opposes centralization under § 1407.
14     Your Honors, Plaintiff Lowe submits that centralization
15 is not relevant here in light of the relatively few number of
16 actions and common counsel.  Six, possibly seven, of the actions
17 currently were filed by common counsel.  Those are all of the
18 actions pending outside of California.
19     So, really, here we're talking about three, possibly four,
20 sets of cases.  We don't believe that Apple has met its heavier
21 burden in those circumstances to justify centralization.
22     As Your Honors have questioned and noted to counsel for
23 Apple, 1404 transfer is the way to go in this case.  Everyone
24 agrees -- all of the plaintiffs agree on the Northern District
25 of California, and we could just move the cases relatively

1   easily using a § 1404 motion or set of motions.  It would be
2   strange to agree to the Northern District of California for
3   purposes of MDL centralization but then oppose a § 1404 motion.
4        If that were the case, however, there is also a venue
5   provision that Apple has relied on that requires the cases
6   to be venued in California, and we would expect they would
7   all move there anyway in connection with that new provision.
8        As Your Honors noted, 1404 transfer could result in all
9   of the cases being related before a single judge in the Northern
10  District of California, and then the cases could all be tried
11  there as opposed to having to move them back out to different
12  districts after pretrial proceedings.
13       So we believe that Section 1404 transfers are the most
14  appropriate path here.  Thank you.
15            JUDGE CALDWELL:  Questions?  Judge Kennelly.
16            JUDGE KENNELLY:  So if we went the 1404(a) route
17  and everybody agreed to it, would your client oppose having
18  the cases -- once they all get to Northern California, would
19  your client oppose having them all put in front of a single
20  judge by whatever process they use in that district?
21            MS. GOLD:  No.  We would not oppose that.
22            JUDGE KENNELLY:  Okay.  Thanks.
23            JUDGE CALDWELL:  Any other questions?
24       Thank you very much, Ms. Gold.
25            MS. GOLD:  Thank you.

1          JUDGE CALDWELL:  The Panel will now recognize
2    John Norris.  Mr. Norris.
3          MR. NORRIS:  Good morning, members of the Panel.
4       Your Honors, I think that the monkey in the wrench for a
5    1404 transfer is, I don't believe -- and I'm sorry.  Let me
6    state myself for the record.  I represent the plaintiffs who
7    are in the six, now seven, state cases that were originally
8    moved to be consolidated by Apple.
9       I don't believe that we would support a 1404 transfer
10   because of the unique choice of law issues that exist in this
11   case.  California, in both the state and federal courts, have
12   recognized a sort of public policy/abstention doctrine that
13   basically says that they will not hear gambling cases.
14      We are concerned, from my end, that a straight and direct
15   transfer would cause Apple to take the position that that rule
16   should apply in a transferred case as opposed to applying the
17   public policy of the transferor courts, which the Court would
18   be bound to do on a 1407 transfer, where it would apply, for
19   example, Alabama law, Tennessee law, and so forth, where the
20   public policy demands that those cases be heard in court.
21   So, for that reason -- and I'll stop right there.
22         JUDGE CALDWELL:  All right.  And I'd like to note
23   that your clients appear in support of centralization in the
24   Northern District of California.  Is that correct?
25         MR. NORRIS:  Yes, Judge Caldwell, under 1407 MDL

1    transfer.  That is correct.

2              JUDGE CALDWELL:  Very well.

3        Questions from the Panel?  Judge Kennelly.

4              JUDGE KENNELLY:  Just a quick one, because I want

5    to make sure I'm getting it.  Your concern is, is that if

6    the transfer were under 1404 as opposed to 1407, a different

7    choice of law rule would apply?

8              MR. NORRIS:  We are not concerned that that would

9    be the results, Your Honor.  We are confident that, either way,

10   that the transferee court would have to apply the law and the

11   choice of law rules of the transferor court.  We are simply

12   concerned that Apple will not agree with that and that Apple

13   will take that position, which would result in additional

14   litigation and motion practice.

15             JUDGE KENNELLY:  Okay.  Thanks.  I get it.

16             JUDGE CALDWELL:  Anyone else?

17       Thank you very much, Mr. Norris.

18             MR. NORRIS:  Thank you.

19             JUDGE CALDWELL:  The Panel will now hear from

20   Benjamin Thomassen.  Would you please make your appearance,

21   Mr. Thomassen.

22             MR. THOMASSEN:  Good morning Your Honors.  My name

23   is Ben Thomassen.  I represent the interested parties Donald

24   Nelson and Cheree Bibbs.  As we stated in our papers and we

25   state today, we are in support of transfer under 1407 to the

1   Northern District of California.  I'll very brief.

2        I think counsel for Apple and Mr. Norris kind of hit on
3   one of the main concerns here underlying the Panel's choice
4   to transfer or not, and that is whether or not the parties
5   presently in other jurisdictions and the parties that will soon
6   be filing additional cases in other jurisdictions would sign
7   on to the voluntary just transfer of venue over to the Northern
8   District of California in light of litigation strategies and
9   risks seen with that kind of transfer as support to just
10  centralizing the cases for pretrial purposes, as everyone agrees
11  should be done here.  So, for that reason, I think that transfer
12  is appropriate.

13          JUDGE CALDWELL:  Thank you.

14      Questions from the Panel members?  Very well.  Thank you.

15      The Court will now recognize Mr. Gibson for a minute of
16  rebuttal.

17          MR. GIBSON:  Thank you, Judge Caldwell.  I'll direct
18  my points to informal coordination and the superiority of
19  transfer under 1407.  This Panel said in the *Zetia* antitrust
20  case that the outcome of 1404 transfer motions and the timing
21  of those rulings in a number of districts is uncertain.  Here,
22  as we've talked about, we have seven districts that would have
23  to all go along in the same time frame.

24      Another thing, as counsel just pointed out, there are a
25  growing number of cases.  We have not talked to the plaintiff

1    in the Mississippi case, the Northern District of Mississippi
2    case recently filed.  We don't know what their position is going
3    to be.  We have had some issues dealing with minor things such
4    as, among the various counsel and the different cases, such as
5    negotiating extensions of time, as we noted in our reply paper
6    last week.  Then the -- in terms of Lowe's argument that some
7    overlapping counsel warrants denial of centralization --
8               JUDGE CALDWELL:  Your time is up, Mr. Gibson.
9         Questions from the Panel?  Judge Kennelly.
10              JUDGE KENNELLY:  Just a quick one.  The concern
11   that Mr. Norris raised about what the position would be if
12   this was a 1404 rather than 1407, is his concern well-founded?
13              MR. GIBSON:  Well, I think certainly Apple is not
14   willing to waive any of its rights, and so I think --
15              JUDGE KENNELLY:  Well, let me ask it a different
16   way.  Do you think the choice of law issue is different if
17   the transfer is under 1404 as opposed to 1407?
18              MR. GIBSON:  It could be.
19              JUDGE KENNELLY:  Well, that's a nice, lawyerly answer.
20         (Laughter.)
21       "It depends" is the answer to most questions.  Thanks.
22              JUDGE CALDWELL:  Any more questions for Mr. Gibson?
23        Thank you all very much.  That concludes the arguments on
24   MDL 2985, the Apple Litigation.
              (Proceedings adjourned at 11:27 a.m.)

CERTIFICATE

     I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter. *

                                              */s/ Bryan A. Wayne*
                                              Bryan A. Wayne

\* PLEASE NOTE:

This hearing was taken via videoconference in compliance with U.S. District Court Standing Order(s) during the COVID-19 pandemic.  Transcript accuracy may be affected by limitations associated with use of electronic technology, including but not limited to sound distortion or audiovisual interference.